## Case No. 9,275.

### MATHEWS v. ABBOTT.

#### [2 Hask. 289.] 1

District Court, D. Maine. Dec., 1878.

BANKRUPTCY—MAKER OF NOTE—SECURITY GIVEN TO INDORSER — SUBROGATION — NATIONAL BANKS—REAL ESTATE SECURITY.

1. By subrogation. the security. given by the maker of a note to the indorser or surety. when both have become insolvent and the liability of the indorser has become fixed, in equity, may

1 [Reported by Thomas Hawes Haskell, Esq., and here reprinted by permission.]

be recovered by the holder of the note and applied to its payment.

[Cited in National Shoe & Leather Bank of Auburn v. Small, 7 Fed. 843.]

2. National banks may hold, under section 5137 of the Revised Statutes, real estate security so acquired, as acquired subsequent to the loan.

Bill by the assignee in bankruptcy of Henry R. Butterfield. the maker of sundry notes, indorsed by respondent Abbott, and held by sundry national banks, the other respondents, to determine whether such banks are entitled to be subrogated to the rights of Abbott as indorser, under a mortgage of real estate to him from the bankrupt to secure his liability for indorsing the notes, his liability having become fixed, and he being insolvent.

Edmund F. Webb and William L. Putnam. for orator.

Gardiner H. Vose, for respondents.

FOX, District Judge. On the sixteenth of November, 1877, the bankrupt mortgaged to H. G. Abbott, certain real estate in Waterville. on condition "that if the said Butterfield shall save harmless the said Abbott from all liability incurred by said Abbott on certain promissory notes signed by said Abbott as indorser, guarantee and surety, for the accommodation of said Butterfield to an amount not exceeding $8000, and from all liability which may hereafter be incurred by said Abbott on any notes given in renewal of said notes now outstanding, and from any and all liability which may hereafter be incurred by said Abbott on any and all promissory notes and bills of exchange as indorser or surety, or for the accommodation of said Butterfield, then this deed shall be void."

Abbott indorsed sundry notes for Butterfield's accommodation, which were afterwards discounted by certain national banks, who are now the holders of these notes, and are made parties to this bill. Abbott is insolvent, and has never paid either of the notes so indorsed by him; but his liability upon all of them has become absolute.

This bill is brought by Butterfield's assignee in bankruptcy against Abbott and the holders of these notes, that the rights of all parties interested in this mortgage may be ascertained and determined by this court; and it would seem that there could not be much occasion for controversy in the matter after the learned and ample discussion of the law in Re Jaycox [Case No. 7,242], by the late Judge Hall, and by Judge Lowell in Re Pierce [Id. 11,140], and subsequently by him in Ex parte Morris [Id. 9.823].

In these opinions both the English and the American authorities are referred to, and they fully sustain the principle as stated by Lowell. J., in Ex parte Morris [supra]. It is well settled, that if a mortgage, pledge, or lien is given by a principal debtor to secure his indorser or other surety, and both become insolvent. the holders of the notes or other debts. for which the surety is bound, have an eq-

uity to require the property to be applied to the discharge of their debts specifically."

A distinction has been sometimes taken between a security for the indemnity of the surety, and one conditioned for the absolute payment of the debt; but as is stated by Chapman, J., in New Bedford Institution for Savings v. Fair Haven Bank, 9 Allen, 178, "It is well settled by the authorities that the creditor has an equitable claim to the security as well when the mortgage is given for mere indemnity, as when the condition is added that the principal shall pay the debt."

It is quite immaterial whether the surety has or not actually paid the debt. If he has become absolutely bound for its payment, as was said by Lord Eldon in Ex parte Waring, 19 Ves. 345, as quoted by Lord Hatherly, 5 Ch. App. 776, "It was true these bills were not paid, but, inasmuch as the estate of the debtor could not be withdrawn until the debts were paid, * * * and inasmuch as the estate of the creditor holding the security was in such a condition that he was not able to make payment of the bills in money's worth, the only way was to dispose of the security and pay the bills. * * * The bill holder comes in, not on account of any special lien he has upon the property, but because the person from whom he holds has a security, which security can not be taken away until all liability upon the bills is at an end."

The surety is to be indemnified from his liability by means of the security he has received for that purpose from his principal; and to use the language of Parker, J., in Hopewell v. Cumberland Bank, 10 Leigh, 225, "If a surety is bound for the debt and is indemnified by the principal debtor, the creditor may pursue the indemnity in exoneration of the liability of the surety, not from any notion of mutual contract between the parties, that in providing for the surety, the creditor shall be equally provided for, but from a principle of mutual equity, independent of contract, namely, that to prevent the surety from being first harassed for the debt or liability, and then turning him round to seek redress from the collateral security given by the principal, a court of equity will authorize and even encourage the creditor to claim through the medium of the surety all the rights he has thus acquired, to be exercised for his benefit and in discharge of his obligations."

The security was given and received, not for the benefit of the general creditors of Abbott, but, it was for the special object of indemnifying him from the payment of these particular liabilities; and if, by a court of equity, it is so applied, the purpose contemplated by the parties to the conveyance is accomplished; the general creditors of the principal can have no cause for complaint, because, as against them, it was in all respects a valid transaction; and, as to the general creditors of Abbott, they are in the

same condition they would be, if Abbott had never assumed this liability; they can have full recourse to all of his estate which should be applied in payment of debts for which he is primarily liable; and they certainly have no right to insist that Butterfield's property should thus be disposed of.

By adopting the course proposed, equal and exact justice is obtained, as the property of the bankrupt, which he had agreed with his surety he should have as security for his liability, goes in discharge of these very liabilities, and a court of equity thus affords its aid to the surety, by applying the property of the principal to the payment of the debts for which it is pledged, which the surety might not be able to do for want of ready money, if he is unable to resort to the security before actual payment by him of the claims of his principal, for which he had thus become responsible.

The holders of the notes of Butterfield are various national banks; and, as they are prohibited from making loans on real estate, it is urged that they cannot avail themselves of this security. This objection is wholly without merit. It does not appear that either of the banks knew of the mortgage, or gave credit on account thereof. All the security which they took at the making of the loan was the personal obligation of the parties, and it is only when they have become insolvent, that the banks ask that the property of the principal may be applied to the relief of the surety; not by force of any agreement to which they were parties; but wholly through the application of certain equitable principles, which, under such circumstances, control such security. This is rather in the nature of security subsequent to the loan, which by section 5137, Rev. St., national banks may hold for debts previously contracted.

Decree in conformity with this opinion.